UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────────

KENNETH STANLEY SAJ,

                                    Plaintiff,

               -vs-                                    12-CV-916-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                    Defendant.

─────────────────────────────────────────

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (JAYA ANN SHURTLIFF,
               ESQ., of Counsel), Amherst, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (GAIL Y.
               MITCHELL, Assistant United States Attorney, of Counsel), Buffalo,
               New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated August 6, 2014 (Item

26).

        Plaintiff Kenneth Stanley Saj initiated this action on June 17, 2013, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (*see* Items 10, 17).  For the following reasons, the Commissioner's motion

is granted, and plaintiff's motion is denied.

## BACKGROUND

Plaintiff was born on May 31, 1967 (Tr. 189).[1]  He filed an application for SSDI, and protectively filed an application for SSI, on January 10, 2009, alleging disability due to status post fracture of his right ankle and heel, with an onset date of February 1, 2008 (Tr. 176-180; *see also* Tr. 193).  The application was denied administratively on March 16, 2009 (Tr. 134).  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Jennifer Whang on September 10, 2010 (Tr. 85-113).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Vocational Expert ("VE") Jay Steinbrenner also testified.

In a decision issued on October 28, 2010, ALJ Whang found that plaintiff was not disabled under the Act (Tr. 116-127).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ reviewed the medical evidence in the record and determined that although plaintiff's right lower extremity dysfunction constituted a "severe" impairment, it did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 122).  The ALJ discussed the testimony and documentary evidence regarding plaintiff's complaints of pain and other symptoms, including notes and opinions from treating and consultative medical sources, and determined that while plaintiff is unable to perform any of his past relevant work, he had the residual functional capacity

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

("RFC") for sedentary work, as defined in the regulations,[2] with certain functional limitations (*id.*).    Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC with these limitations would be able to perform the requirements of a significant number of jobs existing in the national and local economies (Tr. 125-26), and using Rule 201.28 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 126).

The ALJ's decision became the final decision of the Commissioner on August 27, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-7), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to properly assess the weight to be given the opinions of plaintiff's treating and consultative medical sources; (2) failed to properly assess the credibility of plaintiff's testimony and statements with regard to his complaints of pain; and (3) improperly relied on the VE's testimony.  *See* Item 17-1.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision is based on substantial evidence.  *See* Item 10.

---

[2]"Sedentary work" is defined in the regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

## DISCUSSION

**I.    Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d

1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is

presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...."  20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the

claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, as indicated above, ALJ Whang determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since February 1, 2008, the alleged onset date (Tr. 121).  At steps two and three, the ALJ found that plaintiff's "status post right ankle fracture" impairment, while severe, did not meet or equal the severity of any of the impairments in the Listings (Tr. 122).

At step four, the ALJ found that although plaintiff was unable to perform his past relevant "medium exertional" work as a forklift operator or carpenter, he had the RFC to perform sedentary work with the following limitations:

> [T]he claimant requires a sit/stand option permitting him to alternate between a sitting and standing position every hour; only occasional use of ramps and climbing stairs, but never climbing ladders, ropes, or scaffolds; only occasional stooping, kneeling, crouching, and crawling; no push/pull with the right lower extremity; should avoid concentrated exposure to extreme cold; and should avoid hazards, including moving machinery and unprotected heights.

(Tr. 122).  At the final step, based on the testimony of the VE regarding the extent to which

these limitations might erode the occupational base for unskilled sedentary work, the ALJ

determined that there are jobs existing in significant numbers in the national economy that

plaintiff could perform, considering his age, education, work experience, and RFC (Tr. 125-

26).

## IV.    Plaintiff's Motion

### A.    Consideration of Medical Source Opinions

The Social Security regulations provide that, in determining eligibility for SSDI or SSI

benefits, the ALJ must consider various factors in deciding how much weight to give to any

medical opinion in the record, "[r]egardless of its source," including:

> (i) the frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the … physician's
> opinion; (iii) the consistency of the opinion with the record as a whole; (iv)
> whether the opinion is from a specialist; and (v) other factors brought to the
> Social Security Administration's attention that tend to support or contradict
> the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir. 2004) (citing 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2)).[3]  Under these rules, the opinions of treating physicians as to the nature and

severity of the claimant's impairments are generally given "more weight" than other medical

source opinions, and "controlling weight" if based upon well-supported, medically

acceptable clinical and laboratory diagnostic techniques and not inconsistent with other

---

[3]20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012, with the result that subsection (d) was re-designated as subsection (c), without substantive change.  With regard to this case, the ALJ's decision was issued before the effective date of the amendment, and the Appeals Council's ruling was issued after the effective date.  For continuity, the court will herein refer to 20 C.F.R. §§ 404.1527(c) and 416.927(c), presently in effect.

substantial evidence.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  This is because treating

sources "are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical

findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."   *Id.*   The regulations also specify that the

Commissioner "will always give good reasons in [her] notice of determination or decision

for the weight [she] give[s] [claimant's] treating source's opinion."  *Id.*; *see also Halloran*,

362 F.3d at 32; *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998) (stating that the

Commissioner must provide a claimant with "good reasons" for the lack of weight attributed

to a treating physician's opinion).

The regulations further recognize that:

State agency medical and psychological consultants and other program
physicians, psychologists, and other medical specialists are highly qualified
physicians, psychologists, and other medical specialists who are also experts
in Social Security disability evaluation. Therefore, administrative law judges
must consider findings and other opinions of State agency medical and
psychological consultants and other program physicians, psychologists, and
other medical specialists as opinion evidence ….

20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  Thus, the opinions of consulting sources

"may constitute substantial evidence if they are consistent with the record as a whole."

*Barringer v. Commissioner of Social Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citing

*Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Saelee v. Chater*, 94 F.3d 520,

522 (9th Cir. 1996); SSR 96–6p).

In this case, the ALJ's written decision reflects a thorough consideration of the

medical source evidence in the record, including the reports of plaintiff's treating

orthopedist, Dr. Paul Mason, who saw first saw plaintiff on December 22, 2005, the day after plaintiff suffered a "comminuted calcaneal fracture" of his right foot (Tr. 296-97).  Dr. Mason's reports of follow-up examinations in January-March 2006 indicate "interval healing" with work status of "total disability" (Tr. 304).  In September 2006, plaintiff reported that he had returned to work with some intermittent pain (Tr. 271).  Physical examination of the right foot revealed no obvious deformity, no tenderness, and near normal range of motion.  Dr. Mason's impression was healed right calcaneus fracture, with unrestricted full duty work status (*id.*).   In January 2007, plaintiff saw Dr. Mason for his Workers' Compensation "Percentage Scheduled Loss of Use Exam" (Tr. 270).  Dr. Mason reported his opinion that, according to Workers' Compensation Board medical guidelines, plaintiff's right calcaneal fracture resulted in 40% loss of use, but work status was full duty with no restrictions (*id.*).

The ALJ also considered Dr. Mason's May 7, 2009, report to the Workers' Compensation Board indicating plaintiff's "interest[ ] in setting up a permanent disability with his right ankle" (Tr. 289).  Plaintiff reported that he had returned to work, with "rather significant pain about the foot" (*id.*).  Physical examination revealed "approximately 50% decrease in subtalar range of motion" with lateral tenderness, and diagnostic imaging revealed a well healed fracture with "post-traumatic changes" (*id.*).  Dr. Mason reiterated his opinion that the fracture resulted in 40% loss of use (*id.*).  According to the ALJ, this treating source evidence indicates that "while the claimant suffers from some residual pain/limitation related to his right ankle fracture this does not result in a finding that the claimant is disabled" (Tr. 123).

The ALJ also discussed the report of a consultative internal medical examination performed by Dr. Cindrea Bender on March 4, 2009, in connection with plaintiff's claim for SSDI and SSI (Tr. 273-276).  Plaintiff reported a history of a shattered right heel and fractured right ankle, currently causing sharp lateral right heel pain radiating up to his ankle, reduced by medication (Tr. 273).  He also complained of a sharp right hip pain with walking long distances, which lasted about one half hour, also reduced by medication (*id.*). Dr. Bender's examination revealed no acute distress (Tr. 274).  Plaintiff's gait was noted as abnormal, with a limp favoring his left foot (Tr. 274).  He was not able to walk on his heels or toes, but could squat 100% (*id.*).  His stance was normal.  He had a cane that was prescribed by his doctor, but he did not use the cane during the examination, and in Dr. Bender's opinion the cane was not medically necessary (*id.*).  Plaintiff did not need help changing for the examination, getting on and off the exam table, or arising from his chair (Tr. 274-275).  Musculoskeletal findings were reported as normal, including the right ankle "despite history" (Tr. 275), as confirmed by a right ankle x-ray revealing possible posttraumatic subtalar degenerative joint disease, but was otherwise normal findings (Tr. 276-77).  Dr. Bender's impression was heel and ankle pain, per history, with fair prognosis (Tr. 276).  In Dr. Bender's opinion, plaintiff had moderate limitation with walking prolonged distances, lifting excessively large objects, climbing an excessive number of stairs, and squatting secondary to ankle and heel pain, but no limits with reaching, bending, pushing, pulling, speaking, sitting, traveling, hearing, or seeing (*id.*).

The ALJ noted that plaintiff's treating physician, Dr. George Haddad, completed a Physical Residual Functional Capacity Questionnaire form[4] on September 2, 2010, indicating that plaintiff could sit 8 hours in an 8-hour workday; stand one-half hour at a time, or one hour total in an 8-hour workday; lift up to 20 pounds occasionally, and up to 10 pounds frequently; and could not bend, squat, or climb (Tr. 339). Pain medication would occasionally impair and/or preclude performance of even simple work tasks, and he would need to lie down or recline for 5 hours during an 8-hour workday to relieve pain (Tr. 340). As indicated on the questionnaire, in Dr. Haddad's opinion plaintiff was likely to miss four or more days of work per month due to pain symptoms, and he was therefore "disabled from full-time competitive employment five days per week, eight hours per day on a sustained basis" (*id.*).

ALJ Whang accorded this opinion "little weight noting that Dr. Haddad is an internist and not a specialist" (Tr. 124). The ALJ noted further that Dr. Haddad's opinion "relies heavily on the claimant's subjective reports of disability rather than the objective evidence" (*id.*). The ALJ accorded "appropriate" weight to Dr. Bender's opinion on plaintiff's functional limitations, finding the opinion consistent with the objective medical evidence. Considering the totality of the treating source evidence in the record, the ALJ assessed plaintiff's RFC to accommodate plaintiff's symptomatology and functional limitations at the lowest threshold, "[g]iving the claimant the benefit of the doubt related to his disability" (*id.*).

Based on this review, the court concludes that the ALJ's assessment reflects proper consideration of the appropriate weight to be accorded the opinions of treating and

---

[4]Notwithstanding plaintiff's testimony that he treated with Dr. Haddad once a month (Tr. 101), the RFC Questionnaire is the only report from Dr. Haddad contained in the record presented to the court.

consultative medical sources in determining plaintiff's residual functional capacity and limitations, in a manner calculated to provide good reasons to the claimant and the reviewing court for the lack of weight attributed to Dr. Haddad's functional limitation findings.  As discussed by the ALJ, the limitations indicated by Dr. Haddad on the RFC questionnaire form were based primarily on plaintiff's self-reporting, with no reference to objective medical evidence for support.  Notably, Dr. Haddad is an internist, and despite being identified as plaintiff's treating physician, there are no treatment notes, examination reports, or other evidence in the record to indicate that he ever examined plaintiff's ankle. In contrast, Dr. Mason was plaintiff's treating orthopedist, and the record reflects that both he and Dr. Bender conducted comprehensive physical examinations of plaintiff, reporting on the status of plaintiff's impairment and offering medical opinions as to its nature and severity.  *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist.").  As noted by the Second Circuit, "[r]esolution of genuine conflicts between the opinion of the treating source, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion, … that opinion will not be deemed controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

Accordingly, the court finds that the ALJ's RFC determination was made in the light of correct legal standards for considering the opinions of treating and consultative medical sources, and is based on substantial evidence in the record.

**B.    Credibility**

Plaintiff also contends that the ALJ failed to properly assess the credibility of plaintiff's testimony regarding his complaints of disabling pain and limitations of function. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")).    The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning

the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)–(vii); *see also Meadors v. Astrue*, 370 F.App'x 179, 184 n.1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ found that plaintiff's impairment could reasonably be expected to cause the limitations testified to, but that his statements concerning the intensity, persistence and effect of those limitations were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  According to the ALJ, plaintiff was "less than credible" in testifying about the severity of his pain, as demonstrated by the treating orthopedist's reports and opinions as to work status and loss of use, as well as Dr. Bender's consultative examination report indicating that the pain decreased significantly when plaintiff took his medication (*see* Tr. 123-24).

In addition, as the above discussion demonstrates, the ALJ's assessment of plaintiff's residual functional capacity and limitations is supported by the findings of treating sources and other substantial medical evidence in the case record.  This assessment is

sufficiently grounded in the evidence and articulated in the ALJ's determination to make clear to the claimant, to this court, and to subsequent reviewers the weight given to plaintiff's statements about his functional limitations, and the reasons for that weight.

As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

### C.    Vocational Expert Testimony

Finally, plaintiff contends that the Commissioner failed to meet her burden at step five of the sequential evaluation to show that there exists work in the national economy that the plaintiff can perform because the hypothetical presented to the VE by the ALJ was based on an incomplete and inaccurate portrayal of plaintiff's functional limitations.  The court's review of the hearing testimony reveals otherwise.

The transcript reveals that the ALJ asked the VE to assume an individual of plaintiff's age, education, and experience capable of performing sedentary work, with the following additional limitations:

> Requires a sit/stand option allowing alternating between a sitting and standing position every one hour, only the occasional use of ramps and climbing stairs, but never climbing ladders, roes, or scaffolds.  Only occasional stooping, kneeling, crouching, and crawling.  No push pull with the right lower extremity, and no foot control operations with the right lower extremity.  Should also avoid concentrated exposure to extreme cold, and should avoid hazards including moving machinery and unprotected heights.

(Tr. 106; 107-08).  This is an entirely accurate portrayal of plaintiff's RFC as determined by the ALJ, based on substantial evidence in the record as indicated above.

Accordingly, plaintiff is not entitled to remand on the basis of improper reliance on the VE's testimony.

## <u>CONCLUSION</u>

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 11) is denied, the Commissioner's motion for judgment on the pleadings (Item 8) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:    October 8, 2014